# 2006 DTA 85

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

SOCIEDAD DE EDUCACIÓN Y REHABILITACIÓN DE PUERTO RICO
Recurrida

v.

ASOCIACIÓN DE PROPIETARIOS RESIDENTES DE URB. PÉREZ MORIS, INC.
Recurrente

JOSE R. GARCÍA PÉREZ Y NORA I. LEBRÓN TIRADO Y LA
SOCIEDAD LEGAL DE GANANCIALES POR ELLOS CONSTITUIDA

Núm. KLRA-2005-00930

San Juan, Puerto Rico, a 13 de junio de 2006

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez García García y el Juez Ramírez Nazario

López Feliciano, Juez Ponente

Comparece ante nos la Asociación de Propietarios Residentes de la Urbanización Pérez Morris, Inc. (en adelante la Asociación de Residentes o la recurrente), mediante recurso de revisión presentado el 14 de diciembre de 2005. En su recurso, nos solicita que revoquemos una resolución emitida el 7 de julio de 2005, y notificada el 23 de agosto del mismo año, por la Junta de Planificación de Puerto Rico. Con el referido dictamen, la Junta de Planificación autorizó una Consulta de Ubicación para la ampliación de las instalaciones de la Sociedad de Educación y Rehabilitación de Puerto Rico (S.E.R.).

Con el beneficio de la comparecencia de las partes, y sus respectivas posiciones claramente expuestas, procedemos a disponer del recurso.

## I

### Los Hechos e Incidentes Procesales Pertinentes

Con el propósito de obtener autorización para el desarrollo de un proyecto de construcción que permitiera la expansión de sus operaciones, S.E.R. presentó una Consulta de Ubicación ante la Junta de Planificación. Dicho proyecto contemplaría la construcción de varias estructuras en una finca con cabida de dos (2) cuerdas ubicada en la Urbanización Pérez Morris, Calle Báez, Núm. 500, en el Barrio Hato Rey del Municipio de San Juan. El área de construcción comprendería 51,138 pies cuadrados. Los edificios a construirse serían dedicados a servicios de terapia física y ocupacional, servicios médicos, centros de cuido para niños y personas de edad avanzada, entre otros. Ello con el fin de dedicar las estructuras existentes a la Escuela Guillermo Atiles Moreu; permitiendo, a su vez, la diversificación de la oferta académica de dicha institución educativa. Además, se construiría un edificio de estacionamientos soterrado con doscientos veinticinco (225) espacios.

Ante la propuesta de S.E.R., la Asociación de Residentes se opuso a su desarrollo y compareció a las vistas públicas celebradas con el fin de evaluar la viabilidad del proyecto. Allí arguyó que la anuencia a la construcción en cuestión tendría el efecto de aumentar excesivamente el tránsito que discurre por la Calle Ponce de la urbanización. Ello debido a que aquellos vehículos que se dirigieran a las instalaciones de S.E.R., inevitablemente, tendrían que transitar por la referida vía para acceder a la Calle Báez, o sea, a aquélla que daría acceso directo a los edificios de la institución. Según señalaron, los vehículos que ya utilizaban a diario la Calle Ponce a menudo se estacionaban en áreas donde impedían la entrada y salida de los residentes de sus hogares. Razonaron que dicho problema únicamente se agravaría con el aumento en tráfico que implicaría la expansión de las operaciones de S.E.R.

No obstante lo señalado por la Asociación de Residentes, durante el proceso de consulta varias entidades gubernamentales analizaron la consulta desde la perspectiva de su área de especialidad y ninguna de éstas se opuso al desarrollo. Cuando más, algunas hicieron recomendaciones en cuanto ciertas providencias que debían tomarse para garantizar que el proyecto no impactara negativamente otros intereses legítimos. Así, la Autoridad de Carreteras y Transportación de Puerto Rico expresó que no tenía objeción a la construcción y meramente señaló que debía consultarse con el Municipio de San Juan en cuanto al acceso propuesto para el desarrollo. El Municipio de San Juan, por su parte, tanto por escrito como en su ponencia en las vistas celebradas ante la Junta de Planificación, señaló que luego de evaluar los estudios realizados durante el proceso había concluido que existían vías de acceso adecuadas para el desarrollo del proyecto.

Con el beneficio de las posiciones de S.E.R. y de las partes interventoras, mediante la resolución de la que aquí se recurre, la Junta de Planificación autorizó la consulta en cuestión. En su dictamen, el foro administrativo

reconoció que el proyecto propuesto por S.E.R. significaría un aumento en el tránsito en las vías conducentes a las nuevas instalaciones de la entidad. No obstante, concluyó que las vías conducentes al lugar tenían la capacidad para absorber el aumento en tránsito previsto. Además, sostuvo que la ampliación sustancial del área de estacionamiento que se realizaría como parte del desarrollo tenía la cabida suficiente para albergar los vehículos que transitarían hacia los edificios de S.E.R., atendiendo adecuadamente los agravios que podría causar un problema de estacionamientos.

Por otra parte, al autorizar la Consulta de Ubicación, la Junta de Planificación instruyó a S.E.R., entre otras cosas, sobre su deber de obtener los correspondientes permisos de la Junta de Calidad Ambiental con respecto la emisión del polvo y desperdicios sólidos que resultarían de las actividades de construcción. Además, advirtió sobre la necesidad de cumplir con la reglamentación vigente en cuanto a los límites de ruido, así como aquella dirigida a evitar contaminación ambiental.

Inconforme con la determinación de la Junta de Planificación, con fecha del 8 de septiembre de 2005, la Asociación de Residentes presentó una moción de reconsideración. Luego de que el 15 del mismo mes y año dicha moción fuese acogida por el foro administrativo, éste dispuso de la misma declarándola no ha lugar mediante dictamen emitido el 9 de noviembre de 2005.

Inconforme aún, mediante el recurso que aquí nos ocupa, la Asociación de Residentes acude ante este foro.

## II
**Las Cuestiones Planteadas**

La recurrente expone en su escrito de revisión los siguientes señalamientos de errores:

*"A. Erró La Junta de Planificación al aprobar la consulta de marras a pesar de que el proyecto propuesto viola los requisitos de vía de acceso del reglamento de ordenación territorial del Municipio de San Juan, así como los objetivos 19 y 20 y estrategias 19.01 y 20.01 del Plan de Usos de Terrenos de la Región Metropolitana de San Juan.*

*B. Erró la Junta de Planificación al aprobar la consulta de marras en contravención a sus propias resoluciones anteriores.*

*C. Erró la Junta de Planificación al aprobar la consulta de marras aplicando acomodaticiamente para ser la reglamentación en vigor.*

*D. Erró la Junta de Planificación al aprobar la consulta de marras sin que el proponente acreditara su titularidad sobre el predio objeto de la consulta, en violación a la sección 79.04 del Reglamento de Zonificación, Reglamento de Planificación Núm. 4."*

En síntesis, arguye la Asociación de Residentes que el foro administrativo incidió en su dictamen, toda vez que el proyecto de S.E.R. no se ajusta a la reglamentación territorial vigente. Además, señala que mediante su dictamen la Junta de Planificación ignoró los agravios inherentes que para los residentes representan las actividades de construcción del proyecto así como la operación de éste.

## III
**El Derecho Aplicable**

### A
**La Revisión de las Determinaciones Administrativas**

Como cuestión de umbral, es menester señalar que en nuestra jurisdicción impera el principio que predica que las determinaciones administrativas son merecedoras de deferencia por parte de los tribunales. *Martínez v. Rosado*, 165 D.P.R. __ (2005), **2005 J.T.S. 132**; *Otero Mercado v. Toyota de P.R.*, 163 D.P.R. ___ (2005), **2005 J.T.S. 13**; *Franco v. Departamento de Educación*, 148 D.P.R. 703, 709 (1999). Dicha norma responde a que, por su conocimiento especializado, los foros administrativos, de ordinario, están en mejor posición que los tribunales para dictaminar sobre asuntos que manejan a diario. *Rivera Concepción v. ARPE*, 152 D.P.R. 116, 123-124 (2000); *Facultad para las Ciencias Sociales Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521, 533 (1993).

La revisión judicial de decisiones administrativas, de ordinario, se limita a la evaluar si: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y 3) las conclusiones de derecho del organismo administrativo son correctas. *P.R.T.C. v. Junta Reglamentadora de Telecomunicaciones*, 151 D.P.R. 269, 281 (2000). Véase también Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. edición, Bogotá, Forum, 2001, págs. 533-536. Es decir, la revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de las agencias y asegurarse de que éstas desempeñen sus funciones conforme a derecho. *Miranda v. C.E.E.*, 141 D.P.R. 775, 786 (1996).

En cuanto a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por la Sección 4.5 de la Ley Núm. 120 del 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2175. Dicha disposición, establece que *"[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."* *P.C.M.E. v. J. C. A.*, 166 D.P.R. __ (2006), **2006 J.T.S. 7**, 2006; *Rebollo Vda. de Liceaga v. Yiyi Motors*, 161 D.P.R. ___ (2004), **2004 J.T.S. 4**. *A contrarius sensus*, ésta establece también que *"[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."* El razonamiento detrás de la distinción, es que los tribunales gozan de pericia en cuanto a las cuestiones legales por lo cual, en cuanto a las conclusiones de derecho se refiere, no está presente el interés que justifica la deferencia al criterio administrativo. *Martínez v. Rosado, supra; San Antonio Maritime v. Puerto Rican Cement*, 153 D.P.R. 374 (2001); *Miranda v. C.E.E., supra*, pág. 787.

Al tenor de ello, la presunción de corrección que acarrea una decisión administrativa deberá será sostenida por los tribunales a menos que la misma sea derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Matos v. Junta Examinadora*, 165 D.P.R. ___ (2005), **2005 J.T.S. 143**; *E.L. A. v. P.M.C. Marketing Corp.*, 163 D.P.R. ___ (2004), **2004 J.T.S. 202**; *Henríquez v. C.E.S.*, 120 D.P.R. 194, 210 (1989); *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975. Es decir, los tribunales evaluaremos con deferencia las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. *Martínez v. Rosado, supra; Otero Mercado v. Toyota de P.R., supra; Rivera Concepción v. ARPE, supra; Asoc. de Doctores en Medicina al Cuidado de la Salud Visual v. Morales*, 132 D.P.R. 567, 589 (1993).

Según lo ha definido la jurisprudencia, el concepto de evidencia sustancial se refiere a aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *P.C.M.E. v. J. C. A., supra; Ramírez Rivera v. Departamento de Salud*, 147 D.P.R. 901, 905 (1999); *Misión Industrial v. Junta de Planificación*, 146 D.P.R. 64, 134 (1998); *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953). Ello no requiere que a la luz de la prueba que obre en autos la decisión de la agencia refleje la única conclusión lógica a la que podría llegar un juzgador imparcial, pero tampoco consideraremos correcta una determinación sostenida por un mero destello de evidencia. *Id.* Por el contrario, cuando la determinación de la agencia esté sustentada por evidencia sustancial que obre en el expediente del caso, los tribunales nos abstendremos de sustituir el criterio de la agencia por el judicial. *P.C.M.E. v. J. C. A., supra; Otero Mercado v. Toyota de P.R., supra; Reyes Salcedo v. Policía de Puerto Rico*, 143 D.P.R. 85, 95 (1997).

El criterio rector en estos casos será la razonabilidad de la determinación de la agencia luego de considerarse el expediente administrativo en su totalidad. *Id.; Otero Mercado v. Toyota de P.R., supra; Fuertes v. A.R.P.E.,* 134 D.P.R. 947 (1993). Por ende, la parte que impugna judicialmente el dictamen de la agencia tiene el peso de demostrar, mediante la identificación de prueba en contrario que obre en el expediente, que la decisión no está basada en evidencia sustancial o que las conclusiones a las que llegó el foro administrativo son irrazonables. *Ramírez Rivera v. Departamento. de Salud, supra,* pág. 906; *Misión Industrial v. Junta de Planificación, supra,* pág. 131.

No obstante, el que los tribunales den un alto grado de deferencia a los dictámenes de las agencias no significa una renuncia a la función revisora del foro judicial. *Rivera Concepción v. ARPE,* 152 D.P.R. 116, 122-123 (2000); *Del Rey v. J.A.C.L.,* 107 D.P.R. 348, 355 (1978). Los tribunales tenemos un deber ineludible de proteger a los ciudadanos de actuaciones *ultra vires,* arbitrarias o inconstitucionales de las agencias. Las determinaciones de los foros administrativos no gozan de deferencia cuando éstos actúan de manera arbitraria, ilegal, irrazonable o ante la ausencia de prueba adecuada o cuando la agencia cometió error manifiesto en la apreciación de la misma. *Comisionado de Seguros v. Prime Life Partners, Inc.,* 161 D.P.R. ___ (2004), **2004 J.T.S. 105**; *O.E.G. v. Rodríguez,* 159 D.P.R. ___ (2003), **2003 J.T.S. 51**.

No obstante, nuestro Tribunal Supremo ha señalado que los tribunales debemos ejercer con cuidado la revisión de las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que éstas administran y, por ende, manejan a diario. Es decir, las conclusiones de derecho que formulen las agencias en canto a éstos también merecen cierta deferencia del foro judicial. Ello debido a que, por su familiarización con la materia, las agencias desarrollan un conocimiento especializado sobre cuestiones las cuestiones legales que manejan a diario que no debe ser menospreciado, ya que abona a la correcta interpretación de determinados estatutos y reglamentos. *Martínez Segarra y Rosa Hernández v. Rosado Santoni,* 165 D.P.R. ___ (2005), **2005 J.T.S. 132**; *Rivera Rentas v. A & C Development,* 144 D.P.R. 450, 461 (1997).

Claro está, el criterio de la agencia no es infalible, sino que, por el contrario, cede ante una interpretación irrazonable o claramente errónea que justifique que el tribunal ejerza su función revisora en protección de la ciudadanía. *Martínez v. Rosado, supra; Pacheco Torres v. Estancias de Yauco S.E.,* 162 D.P.R. ___ (2003), **2003 J.T.S. 148**.

**B**
## Las Facultades de la Junta de Planificación

En lo pertinente al presente recurso, es menester destacar que mediante la aprobación de la Ley Núm. 75 del 24 de junio de 1975, según enmendada, conocida como la Ley Orgánica de la Junta de Planificación de Puerto Rico, 23 L.P.R.A. secs. 62 *et seq.,* la Asamblea Legislativa creó un organismo administrativo con la encomienda de velar por el desarrollo integral del país mediante, entre otras cosas, la función de procurar el adecuado uso de los terrenos en atención a nuestra limitada extensión territorial. Artículo 4 de la Ley Orgánica de la Junta de Planificación, 23 L.P.R.A. sec. 62c. Véanse también *Asoc. Res. Park Side, Inc. v. J.P.,* 147 D.P.R. 277, 284 (1998); *Arenas Procesadas, Inc. v. E.L.A.,* 132 D.P.R. 593, 607-608 (1993).

Entre los procesos que de conformidad con el ordenamiento vigente le corresponde a la Junta de Planificación atender, se encuentran aquellos relativos a consultas de ubicación. Mediante éstos, dicho foro pasa juicio y emite la decisión que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones legales permiten que se consideren. A tenor con ello, y debido a su pericia sobre la materia, a la Junta de Planificación se le reconoce gran discreción en la evaluación de la viabilidad de los proyectos que se presenten ante su consideración mediante consultas de ubicación. *T-JAC, Inc. v. Centrum Limited,* 148 D.P.R. 70, 85 (1999). Por supuesto, dicha discreción está limitada por las disposiciones legales aplicables, así como el principio general en materia de derecho administrativo que

predica que las determinaciones de las agencias deberán estar basadas en el expediente del caso. *Montalvo v. Mun. de Sabana Grande,* 138 D.P.R. 483, 488-489 (1995).

## IV
**Análisis de las Cuestiones Planteadas**

En primer lugar, cabe señalar que tal y como lo enfatizó la Junta de Planificación en su resolución, de conformidad con el Plan de Ordenación Territorial del Municipio de San Juan de 13 de mayo de 2000, el terreno en el cual S.E.R. pretende desarrollar su proyecto radica en un distrito clasificado como Dotacional de Equipamiento (D.E.). Según lo dispone la Sección 11.04 del reglamento adoptado para administrar el aludido plan (el Reglamento de Ordenación Territorial), *"los Distritos DE identifican los equipamientos (educación, salud, religión, cultural, bienestar social[,] etc.)"*. Por ende, se trata de un distrito, el cual, de conformidad con la zonificación vigente, ha sido destinado precisamente para el desarrollo de instituciones que presten servicios de la índole de los que ofrece S.E.R.

La recurrente señala que las dimensiones de la Calle Ponce son menores a aquéllas que establece la Sección 4.05 de Reglamento de Ordenación Territorial para las carreteras de áreas locales urbanas. Argumenta que toda vez que quien se proponga desarrollar un proyecto residencial, vigente el referido cuerpo reglamentario, tendría que cumplir con las dimensiones que éste requiere para este tipo de carreteras, debe concluirse que un proyecto de la magnitud del propuesto por S.E.R. no puede autorizarse a menos que sea construido en un área que cumpla con los mismos parámetros. De igual manera, arguye que ciertas disposiciones del Plan de Usos de Terrenos de la Región Metropolitana de San Juan del 31 de marzo de 1982 (el Plan de Usos de Terrenos), requieren que un proyecto de esta naturaleza sea construido a lo largo de una vía servida por los sistemas de transportación pública.

En cuanto al señalamiento sobre las dimensiones que deben tener las carreteras urbanas, resulta evidente que en lo sucesivo aquellas que sean construidas como parte de proyectos de urbanización deberán cumplir con lo dispuesto al respecto en el Reglamento de Ordenación Territorial. No obstante, en este caso, el proyecto propuesto por S.E.R. será desarrollado en un área que fue designada para instituciones de esa naturaleza por la zonificación vigente. Ello aun cuando, evidentemente, se conocía del tamaño de las vías existentes.

Por ende, debemos concluir que el hecho de que las medidas de las carreteras del sector no sean del tamaño que contempla el referido reglamento no significa, *per se*, que la Junta de Planificación viene obligada a rechazar la consulta de S.E.R. Por el contrario, toda vez que la zonificación a la que aludimos se hizo con conocimiento de las limitaciones del sector, debemos concluir que procedía entonces que el foro administrativo evaluase las particularidades del proyecto, y su impacto en la zona, para entonces dictaminar sobre la viabilidad del mismo.

Igualmente se desprende de las disposiciones del Plan de Usos de Terrenos a las que alude la recurrente en su escrito, que no existe una exigencia inflexible en cuanto a que los desarrollos institucionales deban ser construidos a lo largo de una vía directamente servida por un sistema de transportación pública. Cierto es que el referido documento menciona entre sus objetivos que proyectos como éste sean construidos en vías que cuenten con dichos servicios. Sin embargo, nuevamente es pertinente señalar que el Plan de Ordenación Territorial que designó el distrito en cuestión al desarrollo de proyectos de instituciones como S.E.R. fue aprobado en una fecha posterior a la adopción del Plan de Usos de Terrenos. En vista de ello, debemos concluir que es durante el proceso mediante el cual la Junta de Planificación evaluó la petición de S.E.R. que correspondía interpretar la relación e interacción entre dichos cuerpos reglamentarios.

En cuanto al argumento de la recurrente -de que el proyecto en cuestión implica un aumento en la cantidad de vehículos que transitarían por la Calle Ponce y, además, que utilizarían la misma como área de estacionamiento entorpeciendo la entrada y salida de los residentes- como relatáramos, este planteamiento fue atendido de forma específica al nivel de la agencia. Así, con el beneficio de los comentarios y las ponencias al respecto de la

Autoridad de Carreteras y el Municipio de San Juan, el foro administrativo concluyó que las vías del sector eran adecuadas para servir de acceso al proyecto. Además, señaló que la construcción del edificio que albergará los automóviles de quienes acudan a las instalaciones de S.E.R. significa una solución apropiada al problema de estacionamiento existente, así como una medida adecuada para evitar que la expansión de las operaciones de dicha entidad agrave el problema. Ello de conformidad con la evidencia presentada en la vista, a los efectos de que el problema existente hasta el momento se debía a la carencia de espacios suficientes de estacionamientos en el predio en que S.E.R. opera en la actualidad.

La recurrente no ha identificado nada en el expediente administrativo que demuestre que dicha conclusión es producto de la arbitrariedad de la agencia y no responde a una adecuada evaluación de la evidencia presentada por las partes. Véase *Matos v. Junta Examinadora, supra; E.L.A. v. P.M.C. Marketing Corp., supra; Henríquez v. C. E.S., supra; Murphy Bernabe v. Tribunal Superior, supra.* Somos de opinión que la evaluación realizada por la Junta de Planificación sobre la evidencia presentada al respecto es merecedora de deferencia por parte de esta curia. Véase *Martínez v. Rosado, supra; Otero Mercado v. Toyota de P.R., supra; Franco v. Departamento de Educación, supra.* Por ende, procede que sostengamos su conclusión de que la preocupación causada a los residentes por el aumento en los vehículos que acudirán al lugar, quedó debidamente atendida en la propuesta de S.E.R.

Por último, nos parece carente de méritos el argumento de la recurrente a los efectos de que las actividades de construcción que se llevarán a cabo, de por sí, causan agravios intolerables a los residentes del sector. Como mencionáramos, en su dictamen, la Junta de Planificación apercibió a la recurrida de su deber de obtener los permisos necesarios para iniciar la construcción en cumplimiento con la reglamentación ambiental y de otra índole aplicable. El planteamiento de la Asociación de Residentes es una invitación a que asumamos, sin más, que durante la construcción se incurrirá en violaciones a la referida reglamentación. De ello suceder, los residentes del sector deberán hacer uso de aquellos mecanismos disponibles para requerir el cumplimiento o detener las actividades que puedan implicar violaciones de ley. Sin embargo, en ausencia de prueba a los efectos, estamos impedidos de asumir de antemano que la construcción de los nuevos edificios de S.E.R. se llevará a cabo al margen de la ley.

En suma, de los autos no surge nada que nos lleve a intervenir con la evaluación realizada por el foro administrativo con pericia sobre la materia pertinente al caso. Véase *Rivera Concepción v. ARPE, supra; T-JC Inc. v. Centrum Limited, supra; Facultad para las Ciencias Sociales Aplicadas, Inc. v. C.E.S., supra.* Por un lado, el terreno en cuestión se encuentra en un distrito que de conformidad con la zonificación territorial vigente ha sido destinado para servicios como los que presta la recurrida. Por otro, la recurrente no ha identificado prueba alguna en el expediente administrativo que evidencie arbitrariedad en la conclusión de esa agencia, a los efectos de que las vías del sector son adecuadas para el aumento en tránsito que podría provocar la expansión de S.E.R. Además, es razonable la determinación de que el problema de estacionamiento de vehículos que podría provocar el proyecto objeto del caso será debidamente atendido mediante la construcción de un edificio de estacionamiento.

## V

**Disposición del Recurso**

Por los fundamentos expuestos, se confirma la resolución de la Junta de Planificación de Puerto Rico objeto del presente recurso.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones